900 So.2d 885 (2005)
STATE of Louisiana
v.
Willie STRICKLAND.
No. 04-KA-843.
Court of Appeal of Louisiana, Fifth Circuit.
March 1, 2005.
*888 John M. Crum, Jr., District Attorney, Fortieth Judicial District, Parish of St. John the Baptist.
Rodney A. Brignac, Assistant District Attorney, Edgard, Louisiana.
Prentice L. White, Louisiana Appellate Project, Baton Rouge, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, JUDGE.
On April 12, 2002, defendant, Willie Strickland, was initially charged in a bill of information with carnal knowledge of a juvenile, in violation of LSA-R.S. 14:80. The State later amended the bill to charge defendant with sexual battery, in violation of LSA-R.S. 14:43.3. On September 30, 2002, the State again amended the bill and ultimately charged defendant with forcible rape, in violation of LSA-R.S. 14:42.1. Defendant was arraigned on the original charge and rearraigned on the amended charges. He pled not guilty and filed several pretrial motions.
Defendant proceeded to trial on September 16, 2003, and a twelve-person jury found him guilty of the lesser charge of attempted forcible rape by a count of ten to two. He was sentenced to five years at hard labor, with one year to be served without the benefit of parole, probation, or suspension of sentence.

FACTS
On March 12, 2002, R.R.,[1] age twelve, was living with her mother, her grandmother, her step-grandfather (defendant), and her uncle in a trailer in Laplace. That night, she and defendant, age 54, were alone in the trailer. R.R. testified that she was sitting in the living room watching television when defendant came into the room, wearing only his underwear, grabbed her by the arm, and pulled her into the back bedroom. She stated that defendant took her clothes off, put her on the bed, and proceeded to insert his penis into her vagina. R.R. tried to fight defendant and repeatedly told him to stop, but it was to no avail. She testified that she was crying during the incident and that it hurt. R.R. explained that defendant was on top of her holding her arms down and that there was no way for her to stop him from what he was doing.
R.R. testified that defendant only partly inserted his penis into her and that he was unable to complete the sex act because her uncle, Eddie Strickland, walked into the bedroom. Eddie, who is defendant's nineteen-year-old son, testified that he came home from work early and heard noises in the back bedroom. He announced that he was home as he walked toward the bedroom. When he looked into the bedroom, he saw defendant quickly throw the covers over himself and saw R.R. getting out of *889 the bed. Eddie stated that R.R. was wearing only her school uniform shirt and was naked from the waist down except for her socks. He asked what was going on but R.R., who was crying hard, just left the room to get dressed, and defendant had nothing to say. Eddie stated that he panicked and ran out of the house. A few days later, Eddie tried to talk to R.R. about the incident, but she cried and refused to talk about it. He talked to his fiancée about what he should do, and then discussed it with his best friend who reported it to the police.
Detective Paul Oubre testified that he received a complaint on March 18, 2002 about the incident. R.R.'s mother was advised to take R.R. to Children's Hospital to be examined, which she did. Thereafter, Detective Oubre interviewed R.R., her mother, and Eddie. Defendant was subsequently arrested on March 19, 2002.
Defendant testified at trial and denied that anything happened between him and R.R. He maintained that R.R. was lying about the incident and claimed that he was sleeping when the incident was alleged to have occurred.

DISCUSSION
On appeal, defendant asserts three assignments of error. When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering all of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). Accordingly, we address the defendant's third assignment of error first, because it involves sufficiency of the evidence.
In defendant's third assignment of error, he argues that there was insufficient evidence to convict him of attempted forcible rape because there were huge discrepancies in the alleged victim's testimony and the alleged eyewitness's testimony regarding what occurred on March 12, 2002. He claims that R.R. fabricated the story of rape because defendant and R.R.'s mother were always fighting. Further, he argues that there was no physical evidence of rape.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record and determine whether a rational trier of fact could have found guilt beyond a reasonable doubt. State v. Lapell, 00-1056 (La.App. 5 Cir. 12/13/00), 777 So.2d 541, 545, writ denied, 01-0439 (La.1/4/02), 805 So.2d 1192.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 378 (La.1982). Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
Defendant was convicted of attempted forcible rape in violation of LSA-R.S. *890 14:27 and 14:42.1. Forcible rape is defined in part as:
A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
To support a conviction for attempted forcible rape, the State must prove that defendant had the specific intent to commit forcible rape and that he did an act for the purpose of, and tending directly toward, the accomplishment of his objective. LSA-R.S. 14:27 and 14:42.1. Specific intent need not be proven as a fact, but may be inferred from the circumstances and the actions of defendant. State v. Bishop, 01-2548 (La.1/14/03), 835 So.2d 434, 437.
Defendant makes several arguments in challenging the sufficiency of the evidence. He first argues that the victim's testimony should not have been believed because of the inconsistency between her testimony and the only eyewitness, Eddie. Defendant relies on the discrepancy between R.R.'s testimony that the incident occurred around 9:00 or 10:00 p.m. and Eddie's testimony that he observed the incident when he arrived home from work sometime after 5:306:00 p.m. A review of the record reveals Eddie never expressly testified what time he arrived home. Eddie testified he got off work early that night sometime between 5:306:00 p.m. but was never asked what time he arrived home.
Defendant next contends there was an inconsistency between the statement R.R. made at Children's Hospital and her testimony at trial. The record reveals no such inconsistency. The medical records from Children's indicate R.R. reported that "[s]ome[thing] wet came out of [defendant]" after defendant inserted his penis into her vagina. At trial, R.R. did not specifically recall telling that to the doctor, but she admitted that she might have said it. It is noted that the victim was twelve years old and was not well educated in the area of sex. Although she testified defendant did not complete the act, she also testified that she did not know what an orgasm was. Further, even if there were inconsistencies between R.R.'s statement at Children's Hospital and her testimony at trial, inconsistencies in a witness's statement are one of any number of factors the jury weighs in determining whether or not to believe a witness's trial testimony. See State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-0150 (La.6/30/00), 765 So.2d 1066.
Defendant further asserts that the jury erred in believing the victim over him. However, the credibility of a witness, including the victim, is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Ledet, 00-1103 (La. App. 5 Cir. 7/30/01), 792 So.2d 160, 171. Defendant maintains that the victim fabricated the story because he and her mother did not get along. Although R.R. admitted defendant and her mother never got along, she specifically stated she and defendant got along and had a friendly relationship. There is nothing in the record to indicate R.R. harbored any animosity toward defendant simply because he and her mother argued.
Defendant also relies on Eddie's testimony that he did not see defendant touching R.R. However, Eddie testified that he *891 announced his presence as he walked toward the bedroom. By the time Eddie arrived in the bedroom, he saw the victim getting out of the bed. A rational trier of fact could conclude that defendant heard Eddie approaching and stopped his actions immediately prior to Eddie's entrance into the bedroom.
Finally, defendant asserts the evidence against him was insufficient because there was no physical evidence. However, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Hotoph, supra at 1045. In this case, the testimony of R.R. was enough to sustain defendant's conviction. R.R. testified defendant grabbed her, took her clothes off, held her down, and inserted his penis in her vagina despite her attempts to fight him off. This supports the essential elements of forcible rape.
In State v. Dewhirst, 527 So.2d 475 (La. App. 5 Cir.1988), writ denied, 535 So.2d 740 (La.1989), this Court found sufficient evidence to uphold defendant's conviction for attempted forcible rape based on the testimony of the victim. The sixteen-year-old victim testified she awoke to find that the defendant had pulled down her clothes and inserted his penis into her vagina. She also testified he pulled her hair and pressed his mouth against hers to prevent her from screaming. He threatened to hurt her if she told anyone about the incident. The defendant claimed the incident did not take place but rather was fabricated by the victim and her family for purposes of gaining custody of children in a custody dispute. Finding that the jury obviously believed the victim rather than the defendant, this Court upheld defendant's conviction.
Similar to the present case, the defendant in Dewhirst was charged with forcible rape, but the jury returned a lesser verdict of attempted forcible rape. This Court stated that it attached "no sinister connotation to the return by the jury of a verdict of attempted forcible rape" where the charged crime was actually perpetrated. Id. at 478. This Court relied on LSA-R.S. 14:27(C) which provides that "any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt." Id. at 478.
Also, in State v. Alberto, 95-540 (La. App. 5 Cir. 11/28/95), 665 So.2d 614, writs denied, 95-1677 (La.3/22/96), 669 So.2d 1222 and 96-41 (La.3/29/96), 670 So.2d 1237, this Court found sufficient evidence to sustain defendant's conviction for forcible rape where the only evidence of the rape was the victim's testimony. In Alberto, the victim testified that the defendant had vaginal intercourse with her against her wishes and despite her resistance. She testified that defendant hit her and threatened her with a knife. The doctor who performed the rape exam did not find any vaginal trauma or seminal fluid. This Court concluded that the jury found the victim's testimony to be credible and that credibility determination would not be reweighed on appeal.
In the present case, the jury heard all of the evidence and made a credibility determination. The jury obviously found the victim to be credible and chose to believe her version of events. Considering the record before us, we find that there is sufficient evidence to uphold defendant's conviction for attempted forcible rape.
In his first assignment of error, defendant contends that his motion to recuse Judge Mary Becnel was erroneously denied. He asserts that Judge Becnel's *892 statements following the preliminary exam hearing demonstrated her bias against him and were prejudicial to the defense, because her statements encouraged the State to amend the bill of information on two separate occasions in order to charge defendant with higher crimes. He also claims that Judge Becnel commented on a potential juror during voir dire which again demonstrated her bias.
Defendant was initially charged with carnal knowledge of a juvenile on April 12, 2002. He filed a motion for a preliminary exam which was heard on August 29, 2002. At the hearing, the State presented the testimony of Detective Paul Oubre and defendant presented the testimony of Eddie Strickland, who is the victim's uncle, and Melissa Richardson, who is the victim's mother. At the conclusion of the hearing, the trial judge made the following comments:
I have a serious problem with this case, I'd like to see the medical records. But this, from all the evidence I heard this is not a case of carnal knowledge. There's been no evidence that this was with consent. So I have a problem with the charge. It's more like a, I think it fits under forcible rape or sexual battery.
I'm going to defer ruling on this matter till I have an opportunity to look at the medical records.
. . . .
This is not carnal knowledge.
The State responded that it, likewise, was going to review it and indicated that it may want to amend the bill of information. The trial judge then stated, "Well, it's not carnal knowledge but it's maybe more. All right. Let's pass on this matter. I'll defer ruling."
After hearing other matters unrelated to defendant, the trial judge returned to defendant's case and the State indicated that it was filing a motion to amend the bill of information to charge defendant with sexual battery. Defendant was rearraigned on the amended charge and pled not guilty. The trial judge then immediately ruled that she found probable cause on the sexual battery, but she stated that defendant could reopen the probable cause hearing in connection with the sexual battery charge.
Thereafter, on September 30, 2002, the State filed a motion to amend the bill of information to amend the charge against defendant to forcible rape. On March 19, 2003, defendant filed a motion to recuse Judge Becnel because she stated that the evidence at the preliminary exam supported a more serious charge, which resulted in the State amending the charge against defendant to a more serious charge. Defendant contended Judge Becnel's statement showed bias and substantially prejudiced him.
A hearing on the motion to recuse was held on March 24, 2003 and was heard by Judge J. Sterling Snowdy. Defendant argued that Judge Becnel failed to act as a neutral arbiter when she expressed her opinion that a more serious crime was involved than carnal knowledge of a juvenile. The State opposed the motion and argued that it considered amending the charge prior to the preliminary exam. The State explained that it amended the charge based on the evidence revealed at the preliminary exam and denied that it acted on any comments by the trial judge.[2]
*893 The State called Judge Becnel to testify at the hearing. Judge Becnel testified that she did not form any bias against defendant or make any decision to prejudge the case before or after the preliminary exam. She stated that she simply commented that the facts shown by the evidence did not fit the charge of carnal knowledge and that the facts were more appropriate for forcible rape or sexual battery. She further stated she felt nothing about defendant's guilt or innocence but was only trying to fit the facts of the case to the charge.
Judge Snowdy denied the motion to recuse finding that Judge Becnel's comments did not remove her from her role as a neutral arbiter. Judge Snowdy explained that the jury was the ultimate trier of fact. He found that her comments were simply an expression of her reaction to the facts she had just heard and that the amended charge was not necessarily related to Judge Becnel's comments. Judge Snowdy noted that the State could have increased or lessened the charge against defendant based on the facts revealed at the preliminary exam.
LSA-C.Cr.P. art. 671 outlines the grounds for recusing a judge. It states that a judge shall be recused when he "[i]s biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial[.]" LSA-C.Cr.P. art. 671(A)(1). A trial judge is presumed to be impartial. The burden is on the defendant to prove otherwise. State v. Howard, 01-5 (La.App. 5 Cir. 4/24/01), 786 So.2d 174, 183.
In State v. Dooley, 38,763 (La.App. 2 Cir. 9/22/04), 882 So.2d 731, the Second Circuit upheld the denial of a motion to recuse the trial judge where the defendant claimed the trial judge's comments during the preliminary exam were biased. In Dooley, defendant sought a preliminary exam hearing after her arrest and before the grand jury issued an indictment. After the hearing, defendant requested she be released because of lack of probable cause. The trial judge denied defendant's request and stated the evidence presented established that she was "`at least guilty of some form of homicide.'" Id. at 745. Defendant filed a motion to recuse the trial judge based on his comment which was denied by the trial judge without referring the matter to another judge and without a hearing. The Second Circuit found the trial judge's comment at the preliminary exam was merely another way of saying there was probable cause to charge her with some form of homicide. The court found defendant failed to show how the trial court's statement represented impermissible bias.
The Louisiana Supreme Court has stated that while trial judges "have a duty to remain impartial and neutral, judges are not merely umpires or moderators." State v. Baldwin, 388 So.2d 679, 686 (La.1980). Rather, a judge "`is charged to see that the law is properly administered, and it is a duty which he can not discharge by remaining inert.'" Id. at 687-688 (quoting United States v. Marzano, 149 F.2d 923, 925 (2nd Cir.1945)). In Baldwin, defendant filed a motion to recuse the trial judge on the basis that he was prejudiced because the judge made comments which suggested to the prosecution objections which could be made. The motion was denied and upheld on appeal.
The purpose of a preliminary exam is to determine whether there is probable cause to charge a defendant with a crime and hold him over for trial. LSA-C.Cr.P. art. 296; State v. Gordon, 00-1013 (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 148, writs denied, 02-0362 (La.12/19/02), 833 So.2d 336, and 02-0209 (La.2/14/03), 836 So.2d *894 134. In the present case, Judge Becnel's comments at the conclusion of the preliminary exam were equivalent to saying there was probable cause to hold defendant on some sex offense. In this instance, the more appropriate sex offense was more serious than the one with which defendant was originally charged. Judge Becnel testified that she had no bias against defendant. Her testimony shows that her only concern was the proper application of the law. Based on the foregoing, we find that Judge Becnel's comments after the preliminary exam hearing did not demonstrate partiality or bias against defendant.
Defendant also complains the trial judge again demonstrated her bias by commenting on a potential juror during voir dire which led the State to immediately challenge the juror for cause before defendant had a chance to rehabilitate the juror.[3]
During voir dire of the first jury panel, the trial judge asked general questions. Prospective juror, Mr. Tassin, stated that his mother and sister's house was broken into and expressed his opinion that the St. John the Baptist Parish police have no credibility. In a side-bar conference, the trial judge expressed her concern that Mr. Tassin's comments were poisonous to the jury because the criminal case to which he referred was known. The State immediately moved to challenge him for cause. Defense counsel objected and, without specifically granting or denying the challenge at that time, the trial judge allowed Mr. Tassin to remain for the rest of voir dire. Voir dire continued with both the State and defense counsel asking questions of the prospective jurors. After voir dire was completed, the State again challenged Mr. Tassin for cause, which was granted on the basis that he stated he would not believe the testimony of a deputy.
The trial judge's initial expression of concern regarding Mr. Tassin did not demonstrate partiality or bias. The record shows the number of prospective jurors was small. The trial judge's statement was likely intended to prevent a mistrial should the prospective jurors be influenced by anything Mr. Tassin said about another criminal proceeding. The trial judge did not immediately grant the State's challenge for cause but rather allowed defendant a full opportunity to rehabilitate the juror.
Considering the foregoing, we find that defendant's motion to recuse the trial judge was properly denied.
In his second assignment of error, defendant asserts that the trial court erred in refusing to grant a mistrial when it declined to give the parties additional peremptory challenges on a new panel of potential jurors, after defense counsel had to exhaust all of his peremptory challenges because three of his legitimate challenges for cause were denied. By this assignment of error, defendant argues that the trial court erred in denying three of his challenges for cause. He claims he exhausted his peremptory challenges and, therefore, prejudice is presumed by the erroneous rulings. Defendant asserts that prospective jurors Kristine Orillion, Marian Grows, and Madelynn Gonzales, all stated that the young age of the victim would affect their ability to be impartial.
LSA-C.Cr.P. art. 797 provides that a defendant may challenge a juror for cause on the following pertinent ground:
(2) The juror is not impartial, whatever the cause of his impartiality. An *895 opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence[.]
A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. However, when a prospective juror has voiced an opinion seemingly prejudicial to the defense, but after further inquiry (frequently called "rehabilitation"), the juror demonstrates the ability and willingness to decide the case impartially according to the law and evidence, a challenge for cause is not warranted. State v. Anthony, 98-406 (La.4/11/00), 776 So.2d 376, 391, cert. denied, 531 U.S. 934, 121 S.Ct. 320, 148 L.Ed.2d 258 (2000); State v. Bush, 02-247 (La.App. 5 Cir. 6/26/02), 822 So.2d 859, 865, writ denied, 02-1887 (La.1/24/03), 836 So.2d 42.
The trial court is vested with broad discretion in ruling on challenges for cause and its ruling will only be reversed when a review of the voir dire record as a whole reveals an abuse of discretion. State v. Anthony, supra. The trial court has great discretion in ruling on cause challenges because it "has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questioning." Id. at 392.
Prospective juror, Kristine Orillion, was a member of the first voir dire panel. After voir dire, defendant challenged Ms. Orillion for cause on the basis that she stated the victim's age would automatically cause her to be biased against defendant. The trial court denied defendant's challenge and defendant subsequently used one of his peremptory challenges to excuse Ms. Orillion.
Prospective jurors, Marian Grows and Madelynn Gonzales, were members of the second jury panel. Defendant challenged Ms. Grows for cause on the basis she could not be fair and impartial due to the age of the victim and challenged Ms. Gonzales for cause on the basis she stated the evidence would make her feel as if she were being violated. Defendant ultimately used a peremptory challenge to exclude Ms. Gonzales from the jury, but Ms. Grows was ultimately seated as a juror.
All three challenged jurors, Orillion, Grows, and Gonzales, had expressed some concern that the youthful age of the victim would affect their ability to be impartial. Ms. Orillion stated she had a twelve-year-old daughter. She explained "they are, children" and "in a way, defenseless and aren't as strong to fight off that type of offense[.]" When defense counsel specifically asked whether the fact the victim was twelve years old would affect her ability to be impartial, Ms. Orillion replied, "[i]t possibly may."
Ms. Orillion's seemingly equivocal response of "it possibly may" is subject to various interpretations depending on the tone of voice, facial expressions and body language used by the prospective juror. The trial court heard Ms. Orillion's answers and witnessed her facial expressions and body language throughout the entire voir dire. It is because of the trial court's superior position to make such a judgment call that the appellate courts use an abuse of discretion as the standard of review.
A review of the entire voir dire shows Ms. Orillion was instructed on the law and never indicated an inability or unwillingness *896 to follow it. Thus, the trial court did not abuse its discretion in denying defendant's challenge for cause of Ms. Orillion based on her equivocal response that something might affect her ability to be impartial.
Ms. Grows stated she had a twelve-year-old granddaughter. When asked whether she would have additional sympathy for the victim so as to prevent her from being a fair and impartial juror, Ms. Grows stated, "it wouldn't bother me that much but it still worry me, yes." Defense counsel then asked whether she might harbor some anger which might cause her to overlook the shortcomings in the prosecutor's case. Ms. Grows replied, "I think it would."
Ms. Gonzales stated that the young age of the victim almost made her feel violated herself. She explained she could not imagine someone doing such an act to a defenseless child. When asked whether it would affect her ability to be impartial, Ms. Gonzales stated, "I'm afraid it would."
The trial court then questioned Ms. Grows and Ms. Gonzales regarding their feelings about the age of the victim. The court specifically asked whether they could set their feeling aside and judge the credibility of the witnesses and the evidence fairly. Ms. Gonzales stated she would try and Ms. Grows stated she thought she could and would give it a try.
Both Ms. Grows and Ms. Gonzales initially stated that their impartiality would be affected by the victim's age. However, upon "rehabilitation" by the trial court, both prospective jurors stated a willingness to follow the law and to not let their feelings impermissibly affect their ability to be fair. The trial court, who was in the position to assess these jurors' demeanor, apparently found that they understood the law and were willing to follow it. Based on the jurors' overall responses and the discretion afforded the trial court, we find that the trial court did not err in denying defendant's challenges for cause as to Ms. Grow or Ms. Gonzales.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990). The review revealed one error that requires corrective action.
The trial court failed to properly inform defendant of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8. The trial court simply advised defendant, "you have a two year prescriptive period in which to file for post conviction relief." This Court has held that the trial court must advise a defendant that the prescriptive period runs from the time his conviction and sentence become final. See State v. George, 99-887 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975. Accordingly, we remand the case and order the trial court to inform defendant of the proper prescriptive period for filing post-conviction relief by sending written notice of the provisions of LSA-C.Cr.P. art. 930.8 to defendant within ten days of the rendition of this opinion and to file written proof in the record that defendant received the notice. Id.

DECREE
For the reasons set forth above, we affirm the defendant's conviction and sentence. We remand the matter and order the trial court to correctly inform defendant of the prescriptive period for seeking post-conviction relief.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The victim's initials are used under the authority of LSA-R.S. 46:1844(W)(3) which allows the court to identify a crime victim, who is a minor or a victim of a sex offense, by using her initials.
[2] The State can amend a bill of information as to its substance anytime before the commencement of trial. LSA-C.Cr.P. art. 487.
[3] This issue was raised in a motion for new trial, rather than the motion to recuse. However, we address the issue insofar as defendant's argument regarding comments during voir dire pertains to the trial judge's position as a neutral arbiter.